UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

```
-------------------------------------------------- x
                                  :
DANIEL NELSON PARSONS            :        3:17 CV 1550 (RMS)
                                  :
V.                                :
                                  :
NANCY A. BERRYHILL,              :
ACTING COMMISSIONER OF           :
SOCIAL SECURITY¹                 :        DATE: MARCH  14, 2019
                                  :
-------------------------------------------------- x
```

RULING ON THE PLAINTIFF'S MOTION TO REVERSE THE DECISION OF THE
COMMISSIONER AND ON THE DEFENDANT'S MOTION FOR AN ORDER AFFIRMING
THE DECISION OF THE COMMISSIONER

This action, filed under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeks

review of a final decision by the Commissioner of Social Security ["SSA"] denying the plaintiff

disability insurance benefits ["SSDI"] and supplemental security income ["SSI"] benefits.

I.    ADMINISTRATIVE PROCEEDINGS

On December 19, 2013, the plaintiff filed an application for SSI, and on April 10, 2014,

the plaintiff filed an application for SSDI claiming that he has been disabled since December 5,

2012 due to a "[c]ollapsed lung, seizures [and that he is] half blind[,]"and because he suffers from

depression and is "suicidal[.]" (Certified Transcript of Administrative Proceedings, dated

November 18, 2017 ["Tr."] Tr. 110; *see* Tr. 312).² The claims were joined and denied at the initial

---

¹ On January 21, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security.  The Federal
Vacancies Reform Act limits the time a position can be filled by an acting official, 5 U.S.C. § 3349(b); accordingly,
as of November 17, 2017, Nancy Berryhill is serving as the Deputy Commissioner for Operations, performing the
duties and functions not reserved to the Commissioner of Social Security.

² The plaintiff has previous applications in the record. On or about March 8, 2008, the plaintiff filed applications for
SSDI and SSI benefits claiming he had been disabled since October 19, 2007, and on November 25, 2008, ALJ
William J. Dolan issued a decision denying the plaintiff's claim for benefits. (Tr. 71-82). On February 16, 2010, the
plaintiff filed applications for SSDI and SSI alleging an onset date of October 19, 2007, and on December 14, 2012,
ALJ James E. Thomas issued an unfavorable decision denying the plaintiff benefits. (Tr. 84-98).  On November 14,

and reconsideration levels, and the plaintiff requested a hearing before an Administrative Law Judge ["ALJ"]. (Tr. 9-10, 184-85).  On February 11, 2016, a hearing was held before ALJ John Noel at which the plaintiff and a vocational expert testified.  (Tr. 33-70; *see* Tr. 365-67).  On April 27, 2016, the ALJ issued an unfavorable decision denying the plaintiff's claim for benefits (Tr. 11-27), and on June 3, 2016, the plaintiff filed a request for review of the hearing decision.  (Tr. 10).  On July 17, 2017, the Appeals Council denied the request, thereby rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-3).

On September 14, 2017, the plaintiff filed his complaint in this pending action (Doc. No. 1), and on December 11, 2017, the defendant filed her answer and administrative transcript, dated November 18, 2017. (Doc. No. 13).  On April 13, 2018, the plaintiff filed his Motion to Reverse or Remand (Doc. No. 22), with Statement of Material Facts (Doc. No. 22-2) and brief in support (Doc. No. 22-1 ["Pl.'s Mem."]).  On June 12, 2018, the defendant filed her Motion to Affirm (Doc. No. 23), and brief in support (Doc. No. 23-1 ["Def.'s Mem."]).  On July 11, 2018, the plaintiff filed a reply brief.  (Doc. No. 26).  On December 18, 2018, the parties consented to the jurisdiction of a United States Magistrate Judge (Doc. No. 27; *see* Doc. Nos. 18, 21), and this case was transferred to this Magistrate Judge.

For the reasons stated below, the plaintiff's Motion to Reverse the Decision of the Commissioner (Doc. No. 22) is *granted*, and the defendant's Motion to Affirm (Doc. No. 23) is *denied.*

II.    FACTUAL BACKGROUND

The plaintiff is married and has an eleventh-grade education.  (Tr. 38).  He worked as a "crew chief" for a landscaping business, and prior to that, installed brick paver driveways.  (Tr.

---

2013, the Appeals Council denied the plaintiff's request for review thereby rendering the ALJ's decision the final decision of the Commissioner.  (Tr. 103-06).

39-40; *see* Tr. 301-02, 313-14). The plaintiff has a license but cannot drive due to his history of seizures. (Tr. 40; *see* Tr. 325 (cannot be out alone or drive because of seizures)). The plaintiff has seizures every few months (*see* Tr. 40-41; *see* Tr. 342 (seizures about once a month)), and, at his hearing, the plaintiff testified that, for example, in 2015, he had "[p]robably four, maybe five[]" seizures. (Tr. 41).

The plaintiff walks with a cane and must sit and rest after "maybe about a block." (Tr. 41; *see* Tr. 325 (reporting that he needs a cane to stand or walk); *see* Tr. 333 ("I have a cane all the time")). He can sit comfortably for about twenty minutes, and uncomfortably for about an hour before he has to move. (Tr. 41). According to the plaintiff, he has had pain in his lower back for the past five years, for which he has received injections in his lower spine. (Tr. 50, 53 (radiating pain from his back to lower extremities)). The plaintiff went to physical therapy, but he did not receive any benefit from that treatment. (Tr. 51-52). Additionally, he experiences neck pain that radiates into his left arm. (Tr. 53-54). The plaintiff testified that he went to the emergency room on one occasion believing that he was having a heart attack, when in fact he was experiencing numbness in his left arm due to radiating pain from his neck. (Tr. 53-54).

The plaintiff testified that his wife helps him shower because he has a "hard time standing up on [his] own without the cane," and she helps him dress. (Tr. 55; *see* Tr. 323, 337). He does not cook because, in November 2014, he had a seizure while cooking breakfast and "that was the last time [his] wife let [him] cook." (Tr. 57; *see* Tr. 323-24 (wife cooks dinner)).

The ALJ asked the plaintiff about an entry in the medical record that stated he had been driving a truck with snowmobiles on it, and that he had fallen off a snowmobile. (Tr. 45-46). The plaintiff denied that he had a truck, that he had snowmobiles, and that he had been riding a snowmobile. (Tr. 45-46). The plaintiff testified that he used to drink heavily, but, at the time of

the hearing, he was just drinking only on the weekends. (Tr. 46-47; *see* Tr. 331 (noting the plaintiff smelled of alcohol at 10:30am)). Additionally, he had a history of suicidal ideation and depression. (Tr. 47).

The vocational expert testified that a person limited to performing medium work, but with the limitations of frequently climbing ramps and stairs, never climbing ladders, ropes or scaffolds, frequently stooping, never being exposed to unprotected heights or moving mechanical parts, and who could perform simple, routine tasks, have occasional contact with the public, and deal with changes in the work setting, limited to simple, work-related decisions, could not perform the plaintiff's past work as a landscape laborer. (Tr. 59-60). The vocational expert then testified that such an individual could perform the work of a hand packer, production worker, and production inspector at the medium or light level. (Tr. 60-61). If such a person needed a cane to ambulate to and from the work station, that person could perform the identified work, but if a cane was needed to perform the job, the medium jobs "would be ruled out[]" because the use of a cane would "preclude the ability to use bilateral hands to perform the job." (Tr. 60-61). If the individual was limited to performing work at the light level of exertion, such individual could perform the work of a receptionist and general office clerk, both of which require occasional lifting and carrying up to twenty pounds, and both of which can be performed at the sedentary level if lifting is limited to ten pounds. (Tr. 62, 64). If an individual had a cane, he could still perform this work by carrying files with one hand. (Tr. 64).

At the conclusion of the hearing, the plaintiff's counsel requested that the ALJ order "post hearing interrogatories to a medical expert inasmuch as [counsel] believe[d] that [the plaintiff's impairment] meets [L]isting 1.04." (Tr. 64). The ALJ responded that "there's a lot in the record with respect to MRIs[.]" (Tr. 65). Plaintiff's counsel and the ALJ engaged in a colloquy about the

ALJ's "quandary" over the plaintiff's credibility in light of the reference in the record to the plaintiff's use of a snowmobile; this reference was "bothering" the ALJ. (Tr. 65-68). Given the plaintiff's counsel's argument that the "analysis should be based upon the objective medical criteria[,]" the ALJ said he would "consider" the request for the medical exam. (Tr. 65-68). In his decision, however, the ALJ denied the plaintiff's request. (Tr. 14).

## III. THE ALJ'S DECISION

Following the five-step evaluation process,[3] the ALJ found that the plaintiff met the insured status requirements through December 31, 2012, and that the plaintiff's SSI application was protectively filed on December 19, 2013 so that, for purposes of the SSI claim, disability was not relevant prior to that date. (Tr. 15). The ALJ concluded that the plaintiff was not under a disability from December 15, 2012, through his date last insured of December 31, 2012. (Tr. 15). The ALJ concluded that, with respect to the SSI claim, that application was filed protectively on December 19, 2013, so "disability is not relevant until the application date, as the claimant is ineligible for benefits until a month after the application month." (Tr. 15, citing 20 C.F.R. §§ 416.202(g),

---

[3] An ALJ determines disability using a five-step analysis. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). First, the ALJ must determine whether the claimant is currently working. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is currently employed, the claim is denied. *Id.* If the claimant is not working, as a second step, the ALJ must make a finding as to the existence of a severe mental or physical impairment; if none exists, the claim is also denied. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant is found to have a severe impairment, the third step is to compare the claimant's impairment with those in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Regulations [the "Listings"]. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *Balsamo v. Chater*, 142 F.3d 75, 79-80 (2d Cir. 1998). If the claimant's impairment meets or equals one of the impairments in the Listings, the claimant is automatically considered disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii, 416.920(a)(4)(iii)); *see also Balsamo*, 142 F.3d at 80. If the claimant's impairment does not meet or equal one of the listed impairments, as a fourth step, he will have to show that he cannot perform his former work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant shows he cannot perform his former work, the burden shifts to the Commissioner to show that the claimant can perform other gainful work. *See Balsamo*, 142 F.3d at 80 (citations omitted). Accordingly, a claimant is entitled to receive disability benefits only if he shows he cannot perform his former employment, and the Commissioner fails to show that the claimant can perform alternate gainful employment. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see also Balsamo*, 142 F.3d at 80 (citations omitted).

416.330). Moreover, the ALJ concluded that the plaintiff has not been under a disability from the application date of December 19, 2013, through the date of his decision. (Tr. 15).[4]

The ALJ found that the plaintiff has not engaged in substantial gainful activity since December 15, 2012, his alleged onset date. (Tr. 17, citing 20 C.F.R. §§ 404.1571 *et seq.* and 416.971 *et seq.*). At step two, the ALJ concluded that the plaintiff has the severe impairments of degenerative disc disease, affective disorder, and substance use disorders (Tr. 17-18, citing 20 C.F.R. §§ 404.1520(c) and 416.920(c)), but that the plaintiff does not have an impairment or combination of impairments that meet or medically equals the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18-19, citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).[5] Specifically, the ALJ discussed the plaintiff's history of a collapsed lung in 2007, but noted that the plaintiff's continued complaints are "not well supported" by the record. (Tr. 18). The ALJ found that the plaintiff's visual impairment is "nonsevere"; his alleged dyslexia is not supported by any diagnosis of his mental health treating sources; and, his alleged schizophrenia is not a medically determinable impairment. (Tr. 18). The ALJ recited that he considered "all physical listings, including [L]isting 1.04[,]" and concluded that the medical evidence in the record does not meet Listing 1.04 and that "no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairments,

---

[4] A claimant's date last insured applies only to claims for SSDI, not SSI. *See McLellan v. Astrue*, No. 3:12-CV-1657 (DFM), 2016 WL 4126414, at *1 n.1 (D. Conn. Aug. 3, 2016); *Severino v. Astrue*, No. 3:07-CV-1347 (WIG), 2008 WL 3891956, at *1 (D. Conn. June 20, 2008), Magistrate Judge's Recommended Ruling approved and adopted, No. 3:07-CV-1347 (MRK) (D. Conn. July 11, 2008). Accordingly, reference to the plaintiff's date last insured of December 31, 2012 is applicable only to his claim for SSDI. The relevant time period for the plaintiff's claims for SSI is the date on which he filed his application for SSI through the date of the ALJ's decision; *see Stergue v. Astrue*, No. 3:13-CV-25 (DFM), 2014 WL 12825146, at *2 (D. Conn. May 30, 2014) (citing *Pratt v. Astrue*, No. 3:10-CV-413 (CFD), 2011 WL 322823, at *3 (D. Conn. Jan. 28, 2011)); which, for this case, is between December 19, 2013 and April 27, 2016.

[5] The Court has reviewed the entire medical record, which includes dozens of records relating to the plaintiff's mental health. At issue on this appeal, however, is only the ALJ's findings relating the plaintiff's physical impairments, so only the medical records relevant to those findings are addressed herein.

individually or in combination." (Tr. 19). The ALJ then addressed the plaintiff's mental impairments before concluding that Listings 12.03, 12.04 and 12.09 were not met. (Tr. 19-20).

At step three, the ALJ found that, "[a]fter careful consideration of the entire record," the plaintiff had the residual functional capacity ["RFC"] to perform medium work as defined in 20 C.F.R. § 404.1567(c) and 416.967(c) except he could frequently climb ramps and stairs, and could frequently stoop, but could never climb ladders, ropes, and scaffolds. (Tr. 20). The ALJ opined that the plaintiff could have no exposure to unprotected heights and no exposure to moving mechanical parts. (Tr. 20). He could perform simple, routine tasks, use judgment limited to simple, work-related decisions, have occasional contact with the public, and deal with changes in the work setting limited to simple, work-related decisions. (Tr. 20). The ALJ considered the plaintiff's history of back pain and neck pain, his depression and mood swings, his memory problems, his use of alcohol, and his work history. (Tr. 21; *see also* Tr. 23 (discussing the plaintiff's mental symptoms)). Additionally, the ALJ discussed "lumbar imaging" relating to the plaintiff's degenerative disc disease and his treatment history (Tr. 21-22), as well as his level of physical activity. (Tr. 22-23).

The ALJ concluded that, through his date last insured, the plaintiff could perform the work of a hand packer, production worker, and production inspector. (Tr. 26, citing 20 C.F.R. §§ 404.1569, 404.1569(a), 416.969 and 416.969(a)). Accordingly, the ALJ concluded that the plaintiff was not under a disability at any time from December 15, 2012 through the date of the decision. (Tr. 26, citing 20 C.F.R. §§ 404.1520(g) and 416.920(g)).

IV.    STANDARD OF REVIEW

The scope of review of a Social Security disability determination involves two levels of inquiry. First, the court must decide whether the Commissioner applied the correct legal principles

in making the determination. Second, the court must decide whether the determination is supported by substantial evidence. *See Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998) (citation omitted). The court may "set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (internal quotation marks & citation omitted); *see also* 42 U.S.C. § 405(g). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998) (citation omitted). The substantial evidence rule also applies to inferences and conclusions that are drawn from findings of fact. *See Gonzalez v. Apfel*, 23 F. Supp. 2d 179, 189 (D. Conn. 1998) (citation omitted); *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977) (citations omitted). However, the court may not decide facts, reweigh evidence, or substitute its judgment for that of the Commissioner. *See Dotson v. Shalala*, 1 F.3d 571, 577 (7th Cir. 1993) (citation omitted). Instead, the court must scrutinize the entire record to determine the reasonableness of the ALJ's factual findings. *See id.* Furthermore, the Commissioner's findings are conclusive if supported by substantial evidence and should be upheld even in those cases where the reviewing court might have found otherwise. *See* 42 U.S.C. § 405(g); *see also Beauvoir v. Chater*, 104 F.3d 1432, 1433 (2d Cir. 1997) (citation omitted); *Eastman v. Barnhart*, 241 F. Supp. 2d 160, 168 (D. Conn. 2003).

V.    DISCUSSION

The plaintiff contends that the ALJ erred at step three of the sequential process in that the ALJ failed to find that the plaintiff's cervical spine impairment meets or equals Listing 1.04. (Pl.'s Mem. at 2). Specifically, the plaintiff argues that the ALJ failed to set forth a sufficient rationale

to support his findings that the plaintiff's impairment failed to meet or equal a listed impairment; the ALJ imposed an incorrect legal standard in evaluating the evidence pertinent to the determination of whether the claimant met the Listing; he improperly considered objective evidence as opinion evidence; and, the ALJ improperly failed to develop the record, in that he failed to utilize the services of a medical expert to determine whether the plaintiff's impairment met or equaled Listing 1.04. (Pl.'s Mem. at 2-3, 8-16).  Additionally, the plaintiff argues that substantial evidence does not support the ALJ's findings at step 3 and step 4 of the sequential evaluation.  (Pl.'s Mem. at 3, 16-20);

In response, the defendant contends that the ALJ did not err in concluding that the plaintiff's impairment did not satisfy Listing 1.04 in that the ALJ properly considered the threshold criteria of Listing 1.04 and then "reasonably did not proceed to evaluate the other criteria of the Listing[]" (Def.'s Mem. at 3-5); the ALJ properly concluded that the plaintiff's cervical spine impairment did not satisfy Listing 1.04 (Def.'s Mem. at 6-8); and, the ALJ's step three finding is supported by the opinion of State agency medical consultant, Dr. Joseph Connolly.  (Def.'s Mem. at 8-9).  The defendant also argues that the ALJ did not err in failing to seek an opinion from a medical expert as the ALJ "demonstrated that he considered [the] [p]laintiff's cervical and lumbar impairments, and properly did not find that the combination of those impairments satisfied the Listings criteria."  (Def.'s Mem. at 9-11).  Additionally, according to the defendant, the ALJ properly evaluated the medical evidence in light of the plaintiff's allegations and arrived at an RFC based on the record as a whole.  (Def.'s Mem. at 11-17).

In his reply brief, the plaintiff claims that, contrary to the defendant's argument, the listing level symptoms in the record relate to the plaintiff's cervical impairment (Doc. No. 26 at 2), and,

the ALJ's characterization of objective evidence as opinion evidence is an "incorrect application of the law." (Doc. No. 26 at 3).

At step three of the five-step analysis, the ALJ must consider whether a claimant's severe impairments meet or medically equal a Listing. The plaintiff contends that the ALJ erred in his conclusion that the plaintiff's impairment does not meet Listing 1.04. (Pl.'s Mem. at 2, 6-16). In his decision, the ALJ stated:

> Listing 1.04 is not met because the medical evidence of record with respect to the claimant's medical condition does not indicate the existence of (A) nerve root compression accompanied by the required physical findings, including motor and sensory or reflex loss; (B) spinal arachnoiditis; or (C) lumbar spinal stenosis resulting in pseudoclaudication[.]

(Tr. 19). The ALJ added, "[N]o acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairments, individually or in combination." (Tr. 19). Listing 1.04A requires, in addition to a spinal disorder such as a herniated disc, arthritis, degenerative disc disease, or a vertebral fracture,

> [e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Part 404, Subpt. P, Appx. 1, 1.04A. The plaintiff bears the burden of demonstrating that "[his] disability met '*all* of the specified medical criteria' of a spinal disorder." *Otts v. Comm'r of Soc. Sec.*, 249 F. App'x 887, 888 (2d Cir. 2007) (summary order) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 531, 110 S. Ct. 885, 107 L.Ed.2d 967 (1990) (emphasis in original)).

The existence of nerve root compression is required under this Listing. In his decision, the ALJ noted that "lumbar imaging indicates only mild disc bulging, with no evidence of nerve root impact[,]" and there "was also evidence of a disc herniation at L4-L5[.]" (Tr. 21). The ALJ was

correct that the MRI of the plaintiff's lumbar spine, taken on January 26, 2013, revealed a "[t]iny protruded far lateral left HNP at L4-L5, without evidence of nerve root compression." (Tr. 437, 506). At that time, the plaintiff was referred to Dr. Frank Setter, a pain management consultant, who noted that MRI results showed a "small HNP at L4-L5[]" and that the plaintiff was using a cane to ambulate. (Tr. 433). A second MRI of the plaintiff's lumbar spine was taken on April 20, 2015. (Tr. 533, 578). The results of that scan revealed "no compression deformities[]" and "[m]ild disk bulges at L3-L4, L4-L5 and L5-S1." (Tr. 533). In his decision, the ALJ referenced these two MRI reports, as well as one bilateral sacroiliac joint injection performed on July 31, 2014. (Tr. 511; *see* Tr. 510-12). The plaintiff, however, underwent several bilateral sacroiliac joint injections, as well as epidural injections, under the care of Dr. Sandeep Johar, to whom the plaintiff was referred in May 2014 for pain management. (Tr. 690; *see* Tr. 492-93, 618-20 (first round of bilateral sacroiliac joint injections); Tr. 499-501, 510-12, 629-31 (second round of bilateral sacroiliac joint injections); Tr. 513-15, 632-34 (third round of bilateral sacroiliac joint injections); Tr. 644-46, 747-49 (first round of epidural injections); Tr. 647-49, 750-52 (second round of epidural injections); Tr.650-52 (third round of epidural injections)). The ALJ, however, did not address this other treatment, or the other criteria of the Listing, particularly as it applied to the plaintiff's cervical spine impairment.

The defendant argues that, "as [the] [p]laintiff's lumbar spine impairment did not satisfy the threshold criteria [of the existence of nerve root compression], the ALJ reasonably did not proceed to evaluate the other criteria of the Listing." (Def.'s Mem. at 5). The plaintiff is correct, however, that that the ALJ's consideration of the lumbar spine, without considering the cervical spine, was incomplete as the Listing covers "'disorders of the spine,' not disorders of the lumbar spine[,]" and the "compression of the nerve root is not, under the [L]isting, limited to the lumbar

region." (Pl.'s Mem. at 9). The plaintiff argues appropriately that the ALJ "failed to evaluate the segment of the spine which has listing level pathologies, offering no reason(s) in support of his finding, and no supporting rationale for review." (Pl.'s Mem. at 8).

In his decision, the ALJ found that the "[c]ervical spine imaging was, by contrast, indicative of significant impairment[]" in that the plaintiff has "'advanced' [degenerative disc disease] at multiple levels with neural foraminal encroachment and a 'mild' forward subluxation at C3 on C4." (Tr. 21).[6] More specifically, the scan of the cervical spine, taken on May 8, 2014, revealed "mild forward subluxation C3 upon C4[,] . . . [m]oderate to advanced degenerative change at C4-C5 and C5-C6 and C6-C7 with anterior and posterior spurring noted[,]" as well as, "advanced encroachment on the left C5-C6 neural foramen and mild encroachment on the right C5-C6 and C6-C7 neural foramen." (Tr. 577). Thus, having found that the plaintiff met the threshold criteria in this diagnostic record, the ALJ then noted the plaintiff reported having to double his pain medication; the physical therapy notes "were remarkable only for reduced lower extremity strength and the use of a cane to ambulate." (Tr. 21-22). Additionally, the ALJ concluded, "The notes indicate that [the plaintiff] consistently exhibited reduced lumbar and cervical range of motion. However, they were normal otherwise, indicating no loss of strength or sensation, and negative straight leg raise tests." (Tr. 22). But there are several other entries related to "limitation of motion of the spine" and "motor loss (atropy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss[]" that the ALJ did not consider. 20 C.F.R. Part 404, Subpt. P, Appx. 1, 1.04A.

---

[6] The defendant acknowledges that the diagnostic finding of "encroachment" may satisfy the criteria of nerve root compression. (*See* Def.'s Mem. at 5 (citing to the cervical spine MRI, the defendant argues that "even if there were diagnostic findings that satisfied the threshold criteria of nerve root compression," the plaintiff failed to establish that his impairment satisfied the other Listing criteria)).

On April 23, 2014, the plaintiff's primary care provider noted weakness in his upper extremities (Tr. 693), and two weeks later, the plaintiff's primary care provider noted numbness in the plaintiff's left upper extremity. (Tr. 692). The day before the imaging of the plaintiff's cervical spine, "[w]eakness in extremities (left upper)" was noted, as was "numbness in the left upper extremity." (Tr. 691-92).

On November 10, 2014, strength testing performed by the plaintiff's physical therapist revealed muscle weakness at knee flexion and extension, ankle dorsiflexion, ankle inversion and eversion, ankle plantar flexion, and great toe extension. (Tr. 564). Additionally, at all of his appointments, Dr. Johar noted "weakness" when assessing the plaintiff's spine. (Tr. 535, 541, 543, 555, 549, 552, 558, 561).

The plaintiff's limitation of motion is equally well-documented in the record. On March 9, 2014, Dr. Derek Noel performed a one-time consultative examination of the plaintiff in connection with his application for benefits. (Tr. 442-46). Dr. Noel's report reflects that the plaintiff has a history of herniated disc with back pain at L1/L2 and scoliosis of the neck, as well as lower back pain for the past seven years with "radicular symptoms down the left lower extremity and muscle spasms." (Tr. 442). Dr. Noel found that the plaintiff had 5/5 grip strength, normal range of motion, a negative straight leg raise, and his cervical spine flexion was within normal limits. (Tr. 443-44). Dr. Noel, however, also noted a decreased range of motion of the left shoulder, cervical, lumbar and hip, and limitations with standing and walking. (Tr. 444).

The plaintiff began treatment with Dr. Johar on June 3, 2014 for neck pain radiating down his left arm/chest area, as well as lower back pain with occasional radiation to the left leg. (Tr. 494).[7] Upon examination, the plaintiff had limited range of motion in the "L-S spines," limited

_____

[7] The plaintiff underwent a workup for complaints of left-sided chest pain at the emergency room on April 17, 2014, which turned out to be "muscular" and "noncardiac" in nature. (Tr. 576, 610-17).

range of motion with extension and side bending and "[a]ctive severely limited range of motion with flexion and extension secondary to pain." (Tr. 494). The plaintiff had positive "Fortin test bilaterally [used to assess for sacroiliac dysfunction],[8] [positive] [Flexion, Abduction, and External Rotation] test bilaterally, [positive] [d]istraction test bilaterally [used to assess joint integrity and nerve root compression in the cervical spine],[9] [and] [positive] [t]high thrust bilaterally [used to assess sacroiliac dysfunction].[10]" (Tr. 494 (footnotes added)). As discussed above, Dr. Johar administered three rounds of bilateral sacroiliac joint injections.

On July 15, 2014, Dr. Johar found, upon examination, active limited range of motion in the L-S spines, positive Fortin test bilaterally, with flexion to 30 degrees and extension to 0 degrees with pain. (Tr. 492). At that appointment, the plaintiff reported doing some yard work, and not needing to take Naprosyn for the past three days, but he continued to have signs consistent with bilateral sacroiliitis. (Tr. 490-91).

Similarly, on August 15, 2014, Dr. Johar found active limited range of motion in the L-S spines, positive Fortin test bilaterally, and increased pain with extensions on exam. (Tr. 543). The plaintiff returned to Dr. Johar for lumbar spine pain on October 17, 2014 (Tr. 542-44); he reported numbness and tingling in his left leg, but denied weakness, and an examination revealed a normal gait with cane use, no cervical spine tenderness, cervical spine active limited range of motion with extension and side bending to the right and improved range of motion with flexion and side bending to the left, bilateral trapezius and medical scapular tenderness on palpitation, lumbar spine active range of motion with flexion to 50 degrees and extension to 0 degrees, increased pain with

---

[8] *See* https://ncbi.nlm.nih.gov (last visited Feb. 26, 2019).

[9] *See* https://medisavvy.com/cervical-distraction-test (last visited Feb. 26, 2019).

[10] *See* https://learningorthpaedics.com/tag/thigh-trust-test (last visited Feb. 26, 2019).

extension, grossly intact sensation in lower extremities bilaterally, negative straight leg raising, and full motor strength about the hips, knees, and upper extremities. (Tr. 543). Again, he had a positive Fortin test bilaterally. (Tr. 543). On August 15, 2014, Dr. Johar noted a positive Fortin test bilaterally as well as "[a]ctive severely limited range of motion with flexion to 40 degrees and extension to 0 degrees with pain." (Tr. 541).

Two months later, the plaintiff reported numbness and tingling in his left leg, and Dr. Johar found "[a]ctive range of motion with flexion to 50 degrees, extension to 0 degrees" and increased pain with extension. (Tr. 543). On November 7, 2014, Dr. Johar noted once again that the plaintiff had a positive Fortin test bilaterally and "[a]ctive severely limited range of motion with flexion to 40 degrees and extension to 0 degrees with pain." (Tr. 546). His range of motion was even more diminished on January 7, 2015, at which appointment Dr. Johar noted "[a]ctive range of motion with flexion to 20 degrees, extension to 0 degrees, increased pain with both." (Tr. 549).

As of April 7, 2015, Dr. Johar's assessment remained the same. (Tr. 552, 718). On April 24, 2015, Dr. Johar noted "[a]ctive severely limited range of motion with flexion to 40 degrees and extension to 0 degrees with pain." (Tr. 555, 732). Three months later, on July 7, 2015, Dr. Johar continued to note a positive Fortin test bilaterally and "[a]ctive severely limited range of motion with flexion to 20 degrees and extension to 0 degrees with pain." (Tr. 558, 728). Dr. Johar opined that the L4-L5 disc herniation seen on the MRI of the lumbar spine "may be the pain generator causing his lower back pain with radicular symptoms." (Tr. 558, 728). On September 4, 2015, Dr Johar noted that the plaintiff had active "severely limited range of motion with flexion to 20 degrees with pain, extension to 0 degrees with pain." (Tr. 561). Upon examination two months later, on November 3, 2015, Dr. Johar's assessment remained the same. (Tr. 724). Additionally, Dr. Johar's records reflect that he referred the plaintiff for physical therapy to

increase his range of motion and strength. (*See, e.g.* Tr. 557, 723, 727; *see also* Tr. 573 (physical therapy notes: "has been seen for ROM, strengthening, and pain management")).

The physical therapy records from November 2014 to January 2015 reflect sensory loss and reflex loss that the ALJ did not consider. On November 10, 2014, the plaintiff's physical therapist noted diminished sensation in the plaintiff's medial and lateral lower leg, and lateral malleolus (the outer ankle bone). (Tr. 565). The strength testing performed by the plaintiff's physical therapist revealed an inability to rotate externally due to pain, and muscle weakness. (Tr. 564). Additionally, the plaintiff's patella tendons were hyperflexive (overactive or overresponsive reflexes), and his Achilles tendons were hypoflexive (lower motor neuron deficit). (Tr. 565). In the December 17, 2014 physical therapy progress report, it was noted that the plaintiff had positive straight leg raise at 30 degrees on the right and 35 degrees on the left. (Tr. 572). In the discharge report from physical therapy, dated January 5, 2015, it was noted that the plaintiff had a positive straight leg raise at 35 degrees bilaterally. (Tr. 573).[11]

Though the ALJ recognized that the physical therapy notes for November 2014 and January 2015 reflected "reduced motor strength and positive straight leg raise[,]" the ALJ assigned these findings "less weight than the orthopedic findings because the physical therapist is not an acceptable medical source and the treatment relationship was only three months, versus the nearly two-year relationship with the orthopedist." (Tr. 22).[12]

---

[11] As the ALJ discussed in his credibility assessment of the plaintiff, on December 29, 2014, the plaintiff allegedly told his physical therapist that he was going to drive his truck to New York to go snowmobiling (Tr. 569), and on January 5, 2015, the plaintiff reported that he had no problems driving, but that he fell in the snow while snowmobiling. (Tr. 568). When asked about these entries at his hearing, the plaintiff testified that he did not recall driving to New York, he did not have a truck or snowmobiles, and he did not go snowmobiling. (Tr. 45-46, 50).

[12] The defendant argues that the foregoing medical evidence includes findings "relating to [the plaintiff's] lower extremities[.]" (Def.'s Mem. at 6). The defendant maintains that, because the findings relate to the lower extremities, they "do . . . not relate to his cervical spine (which would implicate his upper extremities)[.]" (Def.'s Mem. at 6). The Court agrees with the plaintiff in that "neither counsel for the defendant, [n]or [for the plaintiff] is a physician" capable of asserting that the compression in the cervical spine can only impact the upper extremities. (Doc. No. 26 at 2).

The ALJ is correct that the opinions of a physical therapist are not opinions from an "acceptable medical source[,]" and thus, the opinions of physical therapists cannot be assigned controlling weight. *See Cascio v. Astrue*, No. 10 CV 5666 (FB), 2012 WL 123275, at *3 (E.D.N.Y. Jan. 17, 2012); *see* 20 C.F.R. § 404.1513. As an "other source[,]" a physical therapist's opinions are entitled to some weight, but, as the Second Circuit has held, "the ALJ has discretion to determine the appropriate weight to accord the [other source's] opinion based on all the evidence before him; under no circumstances can the regulations be read to require the ALJ to give controlling weight to [an other source's] opinion." *Diaz v. Shalala*, 59 F.3d 307, 313-14 (2d Cir. 1995); *see* Social Security Ruling 06-3p, 2006 WL 2329939, at *5 (S.S.A. Aug. 9, 2006) ("The evaluation of an opinion from a medical source who is not an 'acceptable medical source' depends on the particular facts of each case. Each case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and a weighing of all of the evidence in that particular case.").

The physical therapist's notes referenced herein are not opinions rendered in connection with the plaintiff's application for benefits, but rather, contemporaneous treatment records. This case differs from the case relied on by the defendant in that, here, the ALJ did not weigh an "opinion" by the physical therapist. *See Lena v. Astrue*, No. 10 CV 893 (SRU), 2012 WL 171305 (D. Conn. Jan. 20, 2012) (holding that the ALJ properly rejected the physical therapist's functional capacity evaluation, which is an opinion of what activities an individual can perform); *see also, e.g., Molina v. Colvin*, No. 13 Civ. 4701 (GBD)(GWG), 2014 WL 2573638, at *5 (S.D.N.Y. May 14, 2014) (appropriately rejecting opinion evidence from a physical therapist that the plaintiff was not a candidate for employment), Magistrate Judge's Recommended Ruling approved and adopted,

2014 WL 3925303 (S.D.N.Y. Aug. 7, 2014); *Pardee v. Astrue*, 631 F. Supp. 2d 200, 209 (N.D.N.Y. 2009) (appropriately discounting residual capacity evaluation from physical therapist).

When evaluating the "intensity and persistence" of a claimant's symptoms, and "determining the extent to which [the] symptoms limit [the] capacity for work[,]" the ALJ must consider "objective medical evidence" which is "evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as *evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption*. Objective medical evidence of this type is a useful indicator to assist [the Commissioner] in making reasonable conclusions about the intensity and persistence of [the claimant's] symptoms, and the effect those symptoms, such as pain, may have on [the claimant's] ability to work." 20 C.F.R. § 404.1529(c)(2) (emphasis added). Thus, while assessments of an "other source[,]" such as a physical therapist, "may" be used by the ALJ, *compare* 20 C.F.R. § 404.1513(d) (an ALJ "may use evidence from other sources) *with* 20 C.F.R. § 404.1513(c) (an ALJ "will consider the assessments of acceptable medical sources), the objective medical evidence must be considered by the ALJ.

In this case, there is diagnostic imaging of the plaintiff's back impairment, evidence of diagnostic testing by Dr. Johar that supports the plaintiff's complaints of pain, and objective findings (not opinions regarding the plaintiff's capacity to work) from the physical therapist. *See Burgos v. Berryhill*, No. 3:16 CV 1764 (AWT), 2018 WL 1182175, at *3 (D. Conn. Mar. 7, 2018) (remanding because the ALJ's conclusion at step two regarding the plaintiff's back pain was "not the result of proper application of correct legal principles[]" in that the "ALJ either overlooked or ignored the evidence that the plaintiff's back condition has been visualized by diagnostic imaging, and that her claims were consistent with [her doctor's] low back pain diagnosis and the physical therapist's findings of formaminal compression, sacroiliac joint dysfunction with right sacral

torsion, signs and symptoms consistent with biomechanical dysfunction of the lumbosacral spine
. . .").  The ALJ did not thoroughly consider this evidence at step three.

Here, the ALJ failed to detail his reasons for concluding that the plaintiff's cervical
impairment, or the combination of the plaintiff's cervical and lumbar impairments, did not meet
or equal a listed impairment, and there is compelling evidence relating to Listing 1.04A which the
ALJ neither discussed, nor explained.  *See Ryan v. Astrue*, 5 F. Supp. 3d 493, 509 (S.D.N.Y. 2014)
("Because there is evidence that plaintiff's impairments meet each of the requirements for listing
1.04A, the ALJ must provide an explanation of his reasoning as to why he believes the
requirements are not met and explain the credibility determinations and inferences he drew in
reaching that conclusion.") (citing *Berry v. Schweiker*, 675 F.2d 464, 468 (2d Cir. 1982); *Norman
v. Astrue*, 912 F. Supp. 2d 33, 81 (S.D.N.Y. 2012) (collecting cases); *Rivera v. Astrue,* No. 10 CV
4324(RJD), 2012 WL 3614323 at *11–12 (E.D.N.Y. Aug. 21, 2012)).  The ALJ's error is further
compounded by his reliance on the opinion of the State agency medical consultant, Dr. Joseph
Connolly, who concluded that the plaintiff retained the capacity to perform a range of medium
work.  (Tr. 19, 24-25, 132-39).  Although he had treatment records through August 2014, Dr.
Connolly did not consider the May 8, 2014 cervical spine x-ray as it was not in the record at the
time of his review.  (Tr. 132-33, 139).

The ALJ must consider the "medical evidence that potentially meets the listing
requirements[.]" *Ryan*, 5 F. Supp. 3d at 509.  Dr. Johar's treatment notes reflect findings that differ
from the objective diagnostic testing reflected in the physician therapist treatment records. As
discussed above, there are some entries reflecting muscle weakness, and others where muscle
weakness is not noted.  Similarly, there is conflicting evidence regarding the plaintiff's range of
motion, and there are some entries reflecting positive straight leg testing, and others reflecting

negative straight leg testing. The records, in totality, may satisfy the requirements set forth in

Listing 1.04A, or may establish medical equivalence to Listing 1.04A.[13]  The conflicting evidence

in the record must be addressed, and in the absence of a discussion of that evidence, this Court

cannot conclude that the ALJ's decision is supported by substantial evidence. *Yeomas v. Colvin*,

No. 13 CV 6276P, 2015 WL 1021796, at *19 (W.D.N.Y. Mar. 10, 2015) (holding that the

conflicting evidence with respect to each requirement in Listing 1.04A is "sufficient to require the

ALJ to assess the totality of the evidence and to explain his conclusion"); *see also Murillo v.*

*Berryhill*, No. 16 CV 493 (WIG), 2018 WL 1665691, at *4 (D. Conn. Apr. 6, 2018) (remanding

when there is conflicting evidence and the "ALJ's opinion does not explain how this evidence was

assessed with respect to the listing's specific criteria").

On remand, the ALJ shall consider whether the medical evidence in the record, some of

which was erroneously treated as opinion evidence, is sufficient to satisfy the requirements of

Listing 1.04A.  Upon consideration of the evidence, the ALJ shall determine if a medical expert is

necessary to opine on whether the plaintiff's impairment met or equaled a listing. The plaintiff is

correct that the diagnostic and objective medical evidence discussed above may establish that the

plaintiff's spinal impairments meet or medically equal Listing 1.04A, so that the opinion of a

medical expert could be appropriate.  The use of a medical expert, however, falls within the

discretion of the ALJ. *See* 20 C.F.R. §§ 404.1527(e)(2)(iii), 416.927(e)(2)(iii) ("Administrative

---

[13] "Even if a claimant's impairment does not meet the specific criteria of a Medical Listing, it still may equal the Listing."  *Ryan*, 5 F. Supp. 3d at 507 n.12 (alteration, citation and internal quotation marks omitted).  Specifically,

> [t]he Commissioner will find that a claimant's impairment is medically equivalent to a Medical Listing if: (1) the claimant has other findings that are related to his or her impairment that are equal in medical severity; (2) the claimant has a "closely analogous" impairment that is "of equal medical significance to those of a listed impairment"; or (3) the claimant has a combination of impairments that are medically equivalent.

*Id.* (citation and internal quotation marks omitted); *see* 20 C.F.R. § 404.1526(b)(1)-(3).

law judges may also ask for and consider opinions from medical experts on the nature and severity of your impairment(s) and on whether your impairment(s) equals the requirements of any impairment listed in appendix 1 to subpart P of part 404 of this chapter.").[14] If, after consideration of the evidence, the ALJ adheres to his prior decision, the ALJ shall "explain his reasoning for his ultimate determination with sufficient specificity to allow a reviewing court to evaluate that determination." *Ryan*, 5 F. Supp. 3d at 509.[15]

## VI.   CONCLUSION

Accordingly, for the reasons stated above, the plaintiff's Motion to Reverse the Decision of the Commissioner (Doc. No. 22) is *granted*, and the defendant's Motion to Affirm (Doc. No. 23) is *denied.* This case is remanded to the Social Security Administration for further proceedings.

This is not a recommended ruling.  The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure.  Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. *See* 28 U.S.C. § 636(c)(3); Fed. R. Civ. P. 73(c). The Clerk's Office is instructed that, if any party appeals to this Court the decision made after this remand, any subsequent social security appeal is to be assigned to the Magistrate Judge who issued the Ruling that remanded the case.

Dated this 14th day of March, 2019 at New Haven, Connecticut.

  /s/Robert M. Spector, USMJ
Robert M. Spector
United States Magistrate Judge

---

[14] The ALJ's decision in this case is dated April 27, 2016.  Accordingly, these regulations apply.  As of March 27, 2017, the regulations governing the evaluation of opinion evidence no longer includes these sections relating to medical expert opinion evidence.

[15] The plaintiff also challenges the ALJ's RFC assessment at step four of the sequential analysis.  (Pl.'s Brief at 18-20).  In light of the conclusion that remand is warranted at step three, the Court declines to address this argument because, on remand, a more thorough analysis at step three may impact the ALJ's RFC assessment, and the ALJ's credibility determination.